**DUTTON et al. v. BROOK MAYS & CO.***
**No. 4706.**

Court of Appeal of Louisiana. Second Circuit.

Feb. 5, 1934.

Lester Wilson, of Shreveport, for appellant.

Clifton F. Davis, of Shreveport, for appellees.

TALIAFERRO, Judge.

About the first of the year 1925, Mrs. A. L. Stevens, a teacher of piano music, leased from the defendant an old secondhand piano to be used in instructing her pupils. It was not worth then more than $100. The rental price was $5 per month. She used the instrument and paid the rent for five months and then decided to return it to defendant, but, before doing so, learned that Mrs. Dutton, one of the plaintiffs, desired to lease a piano for her daughter, a pupil of Mrs. Stevens, to practice on. Mrs. Stevens presented the matter to defendant. The change of lessees was satisfactory. Defendant then drafted and signed the following agreement in the interest of Mrs. Dutton:

"To Whom It May Concern:

"This is to certify that we, the Brook Mays & Co., will at any time during the period in which Mrs. Geo. E. Dutton, rents a piano from us, allow all that has been paid as rent on the piano and the $25.00 paid by Mrs. A. L. Stevens, to apply on the purchase price of a new piano."

The parties' relations under this agreement continued until September 25, 1929, at which time defendant notified Mrs. Dutton by letter that it desired to terminate the contract for the rental of the piano, and to have it restored to their possession. She declined to comply with this request. The piano was then seized in suit instituted in the city court of city of Shreveport, but before trial an agreement between the parties was reached whereby the piano was surrendered to defendant, under protest, and all claims for damages resulting from the seizure were waived. Plaintiffs herein, in June, 1931, instituted the present suit to recover $280 paid defendant for rent of the piano while in their and Mrs. Stevens' possession as lessees, and for $5 per month for 20 months, during which period they were forced to rent another piano at that price.

Petitioners allege that at various times since July 6, 1925, they sought to purchase a new piano from defendant under said contract, but defendant refused to give them as favorable price or terms as it offered to other customers on the instruments which petitioners desired to purchase; that, in paying the monthly rental for the cheap piano, Mrs. Dutton was actuated by the desire to accumulate a fund to apply on the purchase price of a new piano, and that defendant is without the legal right to terminate the lease contract and at same time destroy the credit accumulation in her favor resulting from the rent payments of herself and Mrs. Stevens.

The prayer is for judgment for $380, or, in the alternative, that they be decreed to have a credit with defendant to be "applied on the purchase price of any instrument which

*Rehearing granted March 2, 1934.

they may desire to buy, such instrument to be sold them on the same price and terms and conditions as offered by defendant to other people."

Defendant, in addition to pleading the general issue, denies 'that the instrument sued on by plaintiffs is a contract of any nature, and avers that it terminated the rental contract between them because it was legally terminable at will of either party, and, further, because Mrs. Dutton was not paying rentals promptly as they became due, being several months in arrears when the contract was ended.

Plaintiffs were given judgment by the lower court as follows: "For a credit of $280.00 on a new piano, which amount defendant may at its option settle by the payment of $140.00 in cash." Being aggrieved by this decree against it, defendant prosecutes this appeal.

■ Defendant unquestionably had the right to terminate the lease of the piano to Mrs. Dutton when it desired, as it contains no term, and none was otherwise fixed, so far as the record shows. It had run for four years. Plaintiffs could not well complain of defendant's action in terminating it after so long a time. But we do not think that by bringing about an end to their contractual relations defendant had it in its power to deprive plaintiffs of the accumulated credic, arising from rental payments, applicable to payment on the price of a new instrument. It is alleged by plaintiffs, which is supported by the testimony of Mrs. Dutton, that the rental payments were made more in the nature of a savings account for the purchase of a new piano for her daughter than as rent on the old piano. So far as defendant's complaint as to the failure of plaintiffs to make timely payment of rentals, the record leaves no doubt that no objection by defendant had been registered with plaintiffs on this score. During the period of four years the piano was in plaintiffs' possession they paid $255. This amount was paid in nine different payments ranging in sums of from $5 to $50. It is true that in September, 1929, payments were seven months in arrears, but these were paid within a few days after notice of intention to terminate the lease was received by plaintiffs. Plaintiffs had been in arrears for longer periods than this before.

■ The proof discloses that before the lease contract was terminated Mr. and Mrs. Dutton, on different occasions, went to defendant's place of business in the city of Shreveport for the purpose of endeavoring to arrive at terms of purchase of a new piano under the contract with defendant, but were unsuccessful in their efforts. Mr. Dutton says he discussed the matter with Mr. Wellborn, defendant's manager, and was informed by him that plaintiffs did not have any cred-

its with it. Mrs. Dutton was likewise informed by this manager. At Mrs. Dutton's request, Mrs. Stevens looked over the pianos in defendant's stock and selected one she knew would suit Mrs. Dutton. They called together at defendant's place the following day to go into the matter further and were promptly advised by Wellborn that that instrument had been sold. On another occasion Mrs. Stevens secured a price on a new piano for Mrs. Dutton, but when they returned to close the trade Wellborn informed them that the clerk who made the price was without right to do so. Other attempts to acquire a new piano from defendant, with allowance of the accumulated credit, were made, but in each instance plaintiffs were either evaded or their efforts abruptly ignored. From all of these conversations and interviews with defendant's manager the inescapable conclusion is that he did not intend to recognize his company's obligation under an agreement written and signed by itself and implicitly relied on by plaintiff, thereby bringing about the result that his firm would be enriched at the expense of plaintiffs. In addition to all this, Mr. Dutton and his counsel called on Mr. Wellborn, after this litigation arose, and again endeavored to adjust the differences between the parties. They were then told by Wellborn that plaintiffs had no credits on a new piano, and he refused to discuss the matter to any extent. In his testimony Wellborn makes it clear that his position is that his company owes plaintiff nothing, although he states that before the piano was seized by his firm he recognized the binding force of the contract and offered to meet its conditions by making plaintiffs a price on a new instrument, allowing the credit of $280. All the other testimony in the case refutes this statement.

A proper adjudication of the rights of both sides is not without difficulty. The trial judge evidently invoked equitable principles in order to reach the decision appealed from. It would not be fair to unconditionally give plaintiffs judgment for the full amount paid by them to defendant on the contract; and, on the other hand, unless there is some absolute decree against defendant plaintiffs would be helpless to enforce the contract against it. Their past experience demonstrates the correctness of this proposition. Had plaintiffs purchased the piano on credit at its true value at the date they leased it and had not paid any amount on the price, when the contract was terminated they would not have owed, principal and interest, an amount in excess of more than one-half of the rent they paid. The aggregate of the payments made by them was nearly three times the value of the instrument when they leased it. The use of the instrument for the purposes it was leased, during the life of the lease, of course, was worth something to plaintiffs. While the instrument was not

what they desired, yet it served their needs until the time arrived when they hoped to become the owners of a better one by purchase 'from defendant.

We believe the judgment of the lower court does substantial justice between the parties. Under its terms defendant still has the right to comply with the literal conditions of its contract. If the parties cannot reach an agreement, then plaintiffs are fairly well protected in their rights by the money judgment in their favor.

Judgment affirmed.